UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Nationstar Mortgage, LLC,

    Plaintiff

v.

Torrey Pines Ranch Estates Homeowners Association; NV Eagles, LLC; and Nevada Association Services, Inc.,

    Defendants

Case No.: 2:16-cv-00375-JAD-BNW

**Order Granting Summary Judgment on Quiet-title Claims**

[ECF Nos. 64, 67]

    Nationstar Mortgage, LLC initiated this quiet-title action to challenge the effect of the 2013 non-judicial foreclosure sale of a home on which it claims a deed of trust.[1] The bank sues the Torrey Pines Ranch Estates Homeowners Association (the HOA), who authorized the sale to foreclose on its lien; the HOA's foreclosure agent Nevada Association Services; and current owner NV Eagles LLC, seeking a declaration that the foreclosure sale did not extinguish Nationstar's security interest. Nationstar and NV Eagles have filed competing motions for summary judgment. I find that Nationstar is entitled to partial summary judgment in its favor because its obligation to tender the superpriority portion of the lien is excused. So I grant summary judgment on the quiet-title claims in favor of Nationstar, dismiss Nationstar's remaining claims and theories as moot, deny NV Eagles's motion, and give NV Eagles until March 5, 2021, to wind up its claims against third party defendant Lloyd Henderson.

---

[1] ECF No. 25 (amended complaint).

**Background**

**A.     The foreclosure sale**

Lloyd J. Henderson purchased the condominium home at 6217 Newkirk Ct. in Las Vegas, Nevada, in 2007 with a $603,000 loan secured by a deed of trust.[2] The home is located within the common-interest community known as Torrey Pines Ranch Estates and governed by its Declaration of Covenants, Conditions, and Restrictions and Reservation of Easements.[3] The Nevada Legislature gave homeowners' associations a superpriorty lien against residential property for certain delinquent assessments and established a non-judicial foreclosure procedure to enforce such a lien in Chapter 116 of the Nevada Revised Statutes.[4] After the assessments on this home became delinquent, the HOA, through its agent Nevada Association Services, Inc. (NAS), commenced non-judicial foreclosure proceedings on it under Chapter 116 in November 2010.[5]

When Nationstar's predecessor-in-interest learned of the impending foreclosure sale, its attorneys, Miles, Bauer, Bergstrom & Winters, LLP, sent a letter to the HOA through NAS. That letter stated Miles Bauer's position that the nine months of assessments predating the notice of delinquent assessment comprised the superpriority portion of the association's lien, but that it was "unclear" based on the information available to Miles Bauer how much those nine months of assessments were for this property.[6] Whatever it was, Miles Bauer "offer[ed] to pay that sum

---

[2] ECF No. 64-1 (deed of trust).
[3] ECF No. 64-13.
[4] Nev. Rev. Stat. § 116.3116; *SFR Investments Pool 1 v. U.S. Bank* ("*SFR I*"), 334 P.3d 408, 409 (Nev. 2014).
[5] ECF Nos. 64-3 (notice of delinquent assessment lien); 64-4 (notice of default and election to sell); 64-5 (notice of foreclosure sale).
[6] ECF No. 64-6 at 6.

upon presentation of adequate proof of the same by the HOA."[7] Miles Bauer sent a second letter a couple of weeks later, saying that it was familiar, based on communications on other properties, with NAS's belief that sending the bank a statement of the HOA's account for the property would violate the Fair Debt Collection Practices Act (FDCPA), and Miles Bauer offered a Nevada Real Estate Division Advisory Opinion on how to calculate the superpriority portion of the lien.[8] NAS didn't respond to those letters, Miles Bauer never made a tender, and the property was sold at foreclosure on May 31, 2013, to Underwood Partners, LLC for $40,000.[9] Four months later, Underwood transferred the property to NV Eagles.[10]

**B.   The parties' claims**

As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* in 2014, because NRS 116.3116(2) gives an HOA "a true superpriority lien, proper foreclosure of" that lien under the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will extinguish a first deed of trust."[11] Nationstar brings this action to save its deed of trust from extinguishment. It asserts claims for quiet title, breach of NRS 116.1113, wrongful foreclosure, and injunctive relief.[12]

The statutory breach and wrongful foreclosure claims are pled as contingent ones that are entirely dependent on the court determining that the HOA's sale extinguished the deed of trust.[13]

---

[7] *Id.*
[8] *Id.* at 8.
[9] ECF No. 64-10 (foreclosure deed).
[10] ECF No. 64-12 (grant, bargain, sale deed).
[11] *SFR I*, 334 P.3d at 419.
[12] ECF No. 25 (amended complaint).
[13] *See id.* at ¶¶ 59, 67.

3

Injunctive relief is not an independent cause of action—it's a remedy for a true claim. Here, it is pled as a pre-trial remedy in conjunction with Nationstar's quiet-title claim,[14] so I do not construe it as a separate claim. The quiet-title claim is the type recognized by the Nevada Supreme Court in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*—an action "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes."[15] The resolution of such a claim is part of "[t]he long-standing and broad inherent power of a court to sit in equity and quiet title, including setting aside a foreclosure sale if the circumstances support" it.[16] For its part, NV Eagles asserts a quiet-title counterclaim against Nationstar and a third-party quiet-title claim against Henderson, seeking declarations that the foreclosure sale wiped out the interests of both parties and NV Eagles took the property free and clear of their encumbrances.[17]

**C.    The competing summary-judgment motions**

Discovery has closed[18] and Nationstar and NV Eagles move for summary judgment—Nationstar seeking judgment on its quiet-title claim only, and NV Eagles asking for judgment on all claims, including its own.[19] Nationstar offers three reasons why I must hold that the HOA's foreclosure sale did not extinguish its deed of trust: (1) its tender of the superpriority amount was excused because NAS had a well-known policy at the time to reject Miles Bauer's payments for

---

[14] *See id*. at ¶¶ 69–75.

[15] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–1111 (Nev. 2016).

[16] *Id*. at 1112.

[17] ECF No. 6 (NV Eagles's answer, counterclaim, and third-party complaint).

[18] *See* ECF No. 47 (noting that discovery closed 8/20/2019).

[19] ECF Nos. 64, 67.  NAS has not participated in this action since mid-2016; Henderson has not responded.

only the superpriority lien amount; (2) unfairness plus a grossly inadequate sales price compel the court to set aside the sale under the Nevada Supreme Court's holding in *Nationstar Mortg. LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*[20]; and (3) the statute under which this HOA foreclosure sale occurred was unconstitutional.[21] The HOA opposes the motion, arguing, inter alia, that the facts of this case do not entitle Nationstar to have its tender excused.[22] NV Eagles also opposes the motion and filed its own summary-judgment motion. It contends that the recitals in the deed gave it free-and-clear title; Nationstar's interest in the property terminated by operation of Nevada's ancient-lien statute, NRS 106.240; and this record does not support a tender excuse.[23] Because I grant summary judgment in Nationstar's favor on an excused-tender theory, which moots its remaining claims, I do not reach the merits of the majority of the other arguments, claims, and theories.

## Discussion

**A.    Standards for cross-motions for summary judgment**

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[24] The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[25] If the moving party satisfies its

---

[20] *Nationstar Mortg. LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641 (Nev. 2017).
[21] ECF No. 64.
[22] ECF No. 69.
[23] ECF Nos. 67 (NV Eagles's MSJ); 70 (NV Eagles's opp. to bank's MSJ).
[24] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[25] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue of material fact for trial.[26]

Who bears the burden of proof on the factual issue in question is critical. When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[27] Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."[28] When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[29] The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[30] With these principles in mind, I consider the parties' motions.

---

[26] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes*, 67 F.3d 816, 819 (9th Cir. 1995).

[27] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted)).

[28] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991) (citation omitted).

[29] *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[30] *Celotex*, 477 U.S. at 322.

**B.     Nationstar is entitled to summary judgment on its quiet-title claim based on futility of tender.**

Nationstar relies on an excused-tender theory as its first summary-judgment argument. The tender theory recognizes that, in order for an HOA's non-judicial foreclosure sale to wipe out the first deed of trust, it must be foreclosing on the superpriority portion of the lien. But if the superpriority portion of the lien has been satisfied before the sale, that tender "cure[s] the default," so "the HOA's foreclosure on the entire lien result[s] in a void sale as to the superpriority portion."[31]  The net result of such a tender is that the "first deed of trust remain[s] after foreclosure" and the foreclosure-sale buyer purchases the property subject to the deed of trust.[32]

Nationstar didn't tender the superpriority portion of the HOA's lien on this property before the foreclosure sale. Though it offered to make such a payment, it never did.[33]  Nationstar contends that its obligation to tender that payment should be excused because the HOA's foreclosure agent NAS had made it known that it would reject such a tender.[34]

The en banc Nevada Supreme Court adopted this excused-tender theory in *7510 Perla Del Mar Ave. Trust v. Bank of America*,[35] holding that, although a mere "promise to make a payment at a later date or once a certain condition has been satisfied cannot constitute a valid tender," the obligation to tender the superpriority amount is excused if tender would have been

---

[31] *Bank of Amer. v. SFR Invs. Pool 1, LLC* ("*Diamond Spur*"), 427 P.3d 113, 121 (Nev. 2018).
[32] *Id.*
[33] ECF No. 64-6 at 6.
[34] ECF No. 64 at 5–6.
[35] *7510 Perla Del Mar Ave. Trust v. Bank of Amer.*, 458 P.3d 348 (Nev. Feb. 27, 2020) (en banc).

futile because it would have been rejected.[36]  In *Perla Del Mar*, Bank of America's attorneys, Miles Bauer, sent a letter to the HOA's foreclosure agent, Nevada Association Services (NAS), "offering to pay the yet-to-be-determined superiority portion of the HOA's lien . . . ."[37] Though NAS received the letter, it did not respond to it and went forward with the sale.  The evidence at the quiet-title trial "established that at the time relevant to this action, it was NAS's business policy to have its receptionist reject any check for less than the full lien amount" and that "Miles Bauer and the Bank had knowledge of this business practice."[38]  "As a result," the Nevada Supreme Court concluded, "the Bank was excused from making a formal tender in this instance because, pursuant to NAS's known policy, even if the Bank had tendered a check for the superiority portion of the lien, NAS would have rejected it."[39]  The Court therefore "conclude[d] that the district court properly determined that the Bank preserved its interest in the property such that Perla Trust purchased the property subject to the Bank's first deed of trust."[40]

The instant facts are materially indistinguishable from those in *Perla Del Mar*.  Here, Miles Bauer sent NAS a nearly identical letter, stating that "my client hereby offers to pay [nine months' of common assessments pre-dating the notice of default] upon presentation of adequate proof of the same. . . ."[41]  NAS did not respond and went forward with the sale.  And as NAS's corporate counsel has testified, NAS ceased responding to Miles Bauer's letters in 2012.[42]  It

---

[36] *Id*. at 350, 352.
[37] *Id*. at 350.
[38] *Id*. at 351.
[39] *Id*. at 351.
[40] *Id*.
[41] ECF No. 64-6 at 5.
[42] ECF No. 64-7 at 20 (testimony of Chris Yergensen); *accord* ECF No. 64-9 at 29 (testimony of NAS founder/CEO/owner David Stone).

was NAS's position at the time that "disclosing a subset of the delinquency that was in the recorded documents would violate the [Fair Debt Collection Practices Act]," so NAS would not have told Nationstar how much of the total account balance represented the superpriority portion of the lien.[43]  Not that it mattered because—as NAS's "founder/CEO/owner" David Stone has testified—when NAS received a check for the superpriority component only, NAS "would reject that check" without providing an explanation "because it was directed and it was not something that we could do; it was an inaccurate amount, and the terms of negotiating the check were problematic."[44]  NAS's corporate counsel has confirmed in his testimony that NAS would reject checks that claimed to be payment in full:

> NAS's policy in receiving checks [was] that it would accept a check if it had no conditions on it and apply it to the outstanding balance.  If it was a payment in full, it would pay off the account in full, and NAS would close the collection file.  If it was a partial payment and it was made with no conditions, NAS would accept the check, apply it to the outstanding delinquent balance, and continue to collect on the outstanding balance.
>
> **If it was a partial payment that had conditions on it such as "this is payment in full" or "if you accept this, it's payment in full," and it was not, that condition was not necessarily true or agreed upon, then the check would be returned**.[45]

Miles Bauer was taking the position that the payment of nine months of assessments would "fully discharge" Nationstar's "obligations to the HOA per NRS 116.3102,"[46] a condition that

---

[43] ECF No. 64-7 at 23–24.

[44] ECF No. 64-9 at 28–29 (Stone testimony, further explaining that "every check that I received from a lender for the superpriority portion of it . . . had conditions on it").

[45] ECF No. 64-8 at 24 (testimony of Chris Yergensen) (emphasis added).

[46] ECF No. 64-6 at 6 (Miles Bauer letter).

the Nevada Supreme Court has found the lenders legally justified to insist upon.[47] And NAS's corporate counsel has acknowledged in testimony that Miles Bauer was aware of NAS's policies and practices at this time as he "orally spoke to Miles Bauer thousands of times in [his] career."[48]

      Nationstar has thus established that had Miles Bauer tendered a check for nine months of assessments, with its standard conditions, NAS would have rejected it. This evidence of futility is not contradicted in this record. NV Eagles's arguments that, in order for tender to be excused, Nationstar must also establish that the reason Miles Bauer did not tender was because it knew the tender would be rejected, and it was the reliance on that known policy that motivated its failure to tender,[49] are similarly unsupported by the *Perla Del Mar* decision, which identifies just two elements: a policy of rejection and knowledge of that policy.[50] The HOA's effort to distinguish this case from *Perla Del Mar* by arguing that there is no evidence that it or NAS received Miles Bauer's letters[51] is not persuasive. Receipt of an offer to pay is not required. But even if proof of that communication were required, Nationstar satisfied that burden with evidence that the letters were sent[52] and that NAS had poor record-keeping practices.[53] At best, the HOA merely

---

[47] *See Perla Del Mar*, 458 P.3d at 351, n.4. No party contends—let alone has offered evidence—that there were charges for maintenance or nuisance abatement that would have added to the superpriority portion of this lien.

[48] ECF No. 64-8 at 55, 80–81.

[49] ECF No. 70 at 12.

[50] *See Perla Del Mar*, 458 P.3d at 351.

[51] ECF No. 69 at 10.

[52] ECF No. 64-6 (Doug Miles affidavit).

[53] ECF No. 64-7 at 16.

speculates, without evidence, that the letters were not received,[54] which fails to create a genuine issue of fact.[55]

I thus grant summary judgment in favor of Nationstar on its quiet-title claim because its obligation to tender the superpriority portion of the lien is excused, just as in *Perla Del Mar*. Nationstar is therefore entitled to a declaration that the deed of trust was not extinguished by the foreclosure sale. And because the resolution of Nationstar's quiet-title claim in its favor moots its other quiet-title theories and Nationstar's contingent claims against the HOA and NAS, I dismiss them, leaving no claims by Nationstar remaining in this action. This conclusion also entitles Nationstar to summary judgment on NV Eagles's quiet-title counterclaim,[56] leaving NV Eagles's third-party claim against Henderson as the sole remaining claim in this action.

**C.      Deed recitals do not create a presumption that the foreclosure sale extinguished the deed of trust.**

NV Eagles contends that "NRS § 116.31166 unequivocally gives [it] the right to rely on certain recitals contained in the Foreclosure Deed," and those recitals gave it "title free and clear of any claims by Nationstar."[57] But the Nevada Supreme Court recently rejected this argument

---

[54] ECF No. 69 at 10–11.

[55] *See Liberty Lobby*, 477 U.S. at 250 ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party").

[56] Though Nationstar did not expressly seek summary judgment on NV Eagles's counterclaim, sua sponte summary judgment on this claim is appropriate because the evidence that supports the grant of summary judgment in favor of Nationstar on its quiet-title claim also dooms NV Eagles's counterclaim, and the parties have had a full and fair opportunity to address that evidence and make all arguments relevant to the quiet-title dispute. *See Albino v. Baca*, 757 F.3d 1162, 1176 (9th Cir. 2014) (quoting *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) ("Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.'").

[57] ECF No. 67 at 6–7.

in *Saticoy Bay LLC Series 133 McLaren v. Green Tree Servicing LLC*, saying "we now expressly hold that NRS 116.31166's deed recitals do not 'render such deeds unassailable.'"[58]  "NRS 116.31166 do[es] not insulate the circumstances attested to in the recitals from review by courts in appropriate cases," like whether a tender theory "preserved the original deed of trust, such that [the purchaser] took the property subject to" the deed of trust, "notwithstanding the recital of default in the foreclosure deed."[59]  *McLaren* makes it clear that the deed recitals do not prevent this court from considering whether, and holding that, Nationstar was excused from tendering the superpriority portion of the HOA's lien on this property to preserve its deed of trust.

**D.  Nationstar's action is not barred by NRS 106.240.**

Finally, NV Eagles argues that Nationstar cannot enforce the deed of trust because it was discharged under NRS 106.204.  The statute, which Nationstar refers to as Nevada's ancient-lien statute, "creates a conclusive presumption that a lien on real property is extinguished ten years after"[60] "the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof become[s] wholly due. . . ."[61]  NV Eagles contends that the debt secured by this deed of trust became wholly due more than ten years ago because the due date became accelerated when the beneficiary of the deed of trust recorded a Notice of Default and Election to Sell Under Deed of Trust on December 8, 2009.  That notice stated that, due to

---

[58] *Saticoy Bay LLC Series 133 McLaren v. Green Tree Servicing LLC*, 487 P.3d 376, 379 (Nev. 2020) (quoting *Shadow Wood*, 366 P.3d at 1107).

[59] *Id*.

[60] *Pro-Max Corp. v. Feenstra*, 16 P.3d 1074, 1077 (Nev. 2001), *opinion reinstated on reh'g* (Jan. 31, 2001).

[61] Nev. Rev. Stat. § 106.240.

the mortgagor's default, "all sums secured thereby immediately [became] due and payable. . . ."[62]

Assuming without deciding that NV Eagles has standing to raise NRS 106.204 and did not waive this argument by failing to plead it as an affirmative defense or a basis for its counterclaim, and that the notice of default triggered the statute, this argument fails because the beneficiary rescinded that acceleration a week later.[63] NV Eagles asserts that the rescission was ineffective to stop the ten-year clock from running because "the Trustee . . . did not decelerate or revoke the acceleration of the debt."[64] Although the document does not specifically mention deceleration or acceleration, it canceled all effects of the week-earlier acceleration. The Notice of Rescission comprehensively states that "the Beneficiary does hereby rescind, cancel and withdraw said . . . Notice of Default and Election to Sell," and that it "is the intention of the Beneficiary that the . . . Deed of Trust and all obligations secured thereby shall remain in full force and effect and maintain its rightful priority as if said . . . Notice had not been made and given."[65] The net effect of the rescission was to rewrite the history of this loan as if the notice of default—and any of its effects—had never existed. The rescission thus decelerated the debt and restored the original loan maturity date of May 1, 2037.[66] So NRS 106.240 did not extinguish this debt.

---

[62] ECF No. 67-3 at 3 (notice of default and election to sell).

[63] ECF No. 67-4 at 3 (notice of rescission).

[64] ECF No. 67 at 10.

[65] *Id*.

[66] *See* ECF No. 64-1 at 3 (deed of trust). *See Valin v. Nationstar Mortg., LLC*, 2019 WL 5697171, at *3–4 & n.2 (D. Nev. Nov. 4, 2019) (holding that rescissions with similar language were decelerations that restarted the clock under § 106.240); *Bank of New York Mellon v. Seven Hills Master Cmty. Ass'n*, 2020 WL 620273, at *3 (D. Nev. Feb. 10, 2020) (same).

**Conclusion**

IT IS THEREFORE ORDERED that:

- Nationstar's renewed motion for partial summary judgment **[ECF No. 64] is GRANTED in part.  Summary judgment is granted in favor of Nationstar and against all defendants on Nationstar's quiet-title claim (first claim for relief) based on a tender-excused theory; summary judgment is also granted in favor of Nationstar and against NV Eagles, LLC on NV Eagles, LLC's quiet-title counterclaim; the motion is denied in all other respects.**

- Nationstar's **remaining claims are dismissed as moot**.

- NV Eagles's motion for summary judgment **[ECF No. 67] is DENIED.**

- This order leaves as the lone remaining claim NV Eagles's third-party claim against Lloyd Henderson.  **NV Eagles has until March 5, 2021, to commence default proceedings against Henderson or take further action to bring the third-party claim against him to conclusion.**  Failure to do so may result in the dismissal of that claim for failure to prosecute.

- With good cause appearing and no reason to delay, the Clerk of Court is directed to **ENTER PARTIAL FINAL JUDGMENT** in favor of Nationstar Mortgage, LLC, **DECLARING that** the 2013 foreclosure sale of the property known as 6217 Newkirk Court, Las Vegas, Nevada, 89130 did not extinguish the deed of trust recorded on 4/27/07 as instrument 20070427-0004856 in the Clark County Recorder's Office.

Dated: February 19, 2021

_____
U.S. District Judge Jennifer A. Dorsey